UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
HECTOR HENRIQUEZ,

                Plaintiff,

            -against-                      **COMPLAINT**

NEW YORK CITY STORAGE, INC. d/b/a
STORAGE PLUS, KEEP IT LOCKED STORAGE,
INC. d/b/a STORAGE PLUS, GREENPOINT
MINI STORAGE, INC. d/b/a STORAGE PLUS,
LIBERTY SELF STORAGE INC. d/b/a STORAGE
PLUS, and ABRAHAM COHEN,

                Defendants.
----------------------------------------------------------------X

       Plaintiff Hector Henriquez ("Henriquez" or "Plaintiff"), by his attorneys Pechman Law Group PLLC, complaining of defendants New York City Storage, Inc. d/b/a Storage Plus, Keep It Locked Storage, Inc. d/b/a Storage Plus, Greenpoint Mini Storage, Inc. d/b/a Storage Plus, Liberty Self Storage Inc. d/b/a Storage Plus and Abraham Cohen (collectively, "Defendants"), alleges:

## NATURE OF THE ACTION

       1.     Throughout his employment at the East Williamsburg location of Defendants' storage facilities, Storage Plus, Defendants failed to pay Plaintiff overtime compensation for the hours he worked over forty in a week and failed to provide him with accurate wage statements or wage notices.

       2.     Abraham Cohen, through several entities including New York City Storage, Inc., Keep It Locked Storage, Inc., Greenpoint Mini Storage, Inc., and Liberty Self Storage Inc., owns and operates various storage facilities in Queens and Brooklyn under the trade name "Storage Plus," at 1053 Metropolitan Avenue, Brooklyn, NY 11211 ("Williamsburg Store"), 35-00 Review Avenue, Long Island City, NY 11101 ("LIC

Store"), 425 Greenpoint Avenue, Brooklyn, New York 11222 ("Greenpoint Store"), and 165-08 Liberty Avenue, Jamaica, NY 11433 ("Jamaica Store") (together, "Storage Plus" or the "Stores").

3. Despite operating the Stores under separate corporations, the Stores are part of a single integrated enterprise.

4. Plaintiff brings this action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and Sections 190 et *seq.* of the New York Labor Law ("NYLL"), to remedy Defendants' willful violations of those laws and recover unpaid overtime wages, liquidated damages, pre-judgment and post-judgment interest, and attorneys' fees and costs.

## JURISDICTION

5. This Court has subject matter jurisdiction over this case pursuant to 29 U.S.C. § 216(b), 28 U.S.C. § 1331 and 28 U.S.C. § 1337, and has supplemental jurisdiction over Plaintiff's claims under the NYLL pursuant to 28 U.S.C. § 1367.

## VENUE

6. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391. All facts alleged in this Complaint occurred at various Storage Plus locations, all of which are located, and operated by Defendants, in the Eastern District of New York.

## THE PARTIES

**Plaintiff**

7. Henriquez resides in Brooklyn, New York.

8. Defendants employed Henriquez as a maintenance worker from approximately July 13, 2004 through June 9, 2018.

2

9. Throughout his employment with Defendants, Henriquez engaged in the production or in the handling or selling of, or otherwise working on, goods or materials that were moved in or produced for interstate commerce.

10. During the relevant period, Henriquez was a covered, non-exempt employee within the meaning of the FLSA and NYLL.

**Defendants**

11. The Corporate Defendants, New York City Storage, Inc., Keep It Locked Storage, Inc., Greenpoint Mini Storage, Inc., and Liberty Self Storage Inc. (the "Corporate Defendants"), are New York corporations owned and operated a storage facility in Queens or Brooklyn, New York, under the same trade name, "Storage Plus."

12. Storage Plus is an "enterprise engaged in commerce" within the meaning of the FLSA.

13. Each of the Stores has employees engaged in interstate commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person.

14. Within the three years preceding the filing of this complaint, the Stores individually and jointly had an annual gross volume of sales in excess of $500,000.

15. The Corporate Defendants are a single integrated enterprise that employed Plaintiff at all relevant times.

16. The Corporate Defendants' operations are integrated and unified.

17. Abraham Cohen ("Cohen") owns and is the President of each of the Corporate Defendants.

18. Cohen centrally controls the operations of the Corporate Defendants, through a single website, www.nystorage.com (the "Website"), which advertises the

services of all four Storage Plus locations.

19. The Website directs new Storage Plus customers to call a single telephone number, regardless of the Storage Plus location of interest.

20. The Website also permits visitors to reserve and pay for storage units at any one of the four Stores.

21. Cohen centrally controls the operations of the Corporate Defendants' labor relations.

22. The Website advertises career opportunities at all four Stores.

23. Although each of the Stores had an on-site manager, Cohen dominated the day-to-day operations of the Stores and exercised final decision-making authority to determine the Stores' employees' schedules and pay rates.

24. For instance, Cohen decided to convert Henriquez's pay from an hourly rate to a salary in 2008.

25. After converting Henriquez's pay to a salary rate, Cohen has directed Storage Plus managers to require Henriquez to work on Sundays, his usual day off, or to come in earlier than his scheduled start time to perform duties like clearing snow from pathways.

26. Cohen was regularly present on the premises of the LIC Store, where he maintains an office, and was on the premises of the other Storage Plus locations to collect money and discuss business with managers approximately one to two times per month.

27. On one occasion, Doron Eliyahu ("Eliyahu"), a manager hired and supervised by Cohen, directed Williamsburg Store employees, including Plaintiff, to clear snow from the premises of that store, the Greenpoint Store, and the Jamaica Store.

28. In early 2018, Cohen directed Storage Plus employees, including Plaintiff,

4

to convene at the LIC Store to discuss store policies and the employee manual that apply to all Storage Plus stores.

29. Cohen exercised sufficient control over Storage Plus and Henriquez's employment to be considered Henriquez's employer under the FLSA and NYLL.

## FACTUAL ALLEGATIONS

30. Defendants did not pay Henriquez overtime compensation throughout his employment at Storage Plus.

31. Henriquez began working for Storage Plus as a maintenance worker in 2004 at the Williamsburg Store.

32. As a maintenance worker, Henriquez painted and cleaned the three-building facility, assisted customers in accommodating their belongings in storage units and showing them units, cleaned out units between customers, and performed small repairs within the facility.

33. From the start of his employment to approximately 2009, Henriquez worked the following regular schedule at the Williamsburg Store: Monday through Friday from approximately 8:00 a.m. to 6:00 p.m., and Saturday from approximately 8:00 a.m. to 5:00 p.m.

34. If a tenant arrived with items to store shortly prior to closing, Henriquez was obligated to stay and work after closing time until that tenant left.

35. Starting in 2008, approximately five or six times per year, Storage Plus managers directed Henriquez to work on Sundays. Henriquez was not paid additional wages for this work.

36. Several times during each winter season of Henriquez's employment, when a snowstorm clogged the walkways of the Williamsburg Store, Storage Plus

5

managers directed Henriquez to go to work two hours earlier to clear the snow from the paths. Henriquez was not paid additional wages for this work.

37. Several times per year, Storage Plus managers directed Henriquez to perform repairs on the Williamsburg Store on holidays when it was officially closed to the public, including repairing the roof and painting. Henriquez was not paid additional wages for this work.

38. From approximately 2009 to the end of his employment, with the exception of a one-month vacation in December 2011, Henriquez worked the following regular schedule at the Williamsburg Store: Monday through Friday from approximately 8:00 a.m. to 7:00 p.m., and Saturday from approximately 8:00 a.m. to 6:00 p.m., totaling approximately 65 hours per workweek.

39. From approximately April 2008 to August 2011, Defendants paid Henriquez a biweekly salary of $1,232 by check, regardless of the number of hours actually worked.

40. From approximately August 2011 through December 2011, Defendants paid Henriquez a biweekly salary of $1,540 by check, regardless of the number of hours actually worked.

41. From approximately January 2012 through December 2013, Defendants paid Henriquez a biweekly salary of $1,600 by check, regardless of the number of hours actually worked.

42. From approximately January 2014 through December 2014, Defendants paid Henriquez a biweekly salary of approximately $1,680 by check, regardless of the number of hours actually worked.

43. From approximately January 2015 to November 25, 2015, Defendants paid Henriquez a biweekly salary of $1,730 by check, regardless of the number of hours actually worked.

44. From November 26, 2015 through May 9, 2017, Defendants paid Henriquez a biweekly salary of $1,770 by check, regardless of the number of hours actually worked.

45. From approximately May 10, 2017 to January 2, 2018, Defendants paid Henriquez a biweekly salary of $1,860 by check, regardless of the number of hours actually worked.

46. From January 3, 2018 through the end of his employment, Defendants paid Henriquez a biweekly salary of $1,950 by check, regardless of the number of hours actually worked.

47. Henriquez's salary did not vary on weeks that he worked an additional shift on Sunday or arrived earlier for his regular shift at a supervisor's direction.

48. Defendants expected Henriquez to serve customers while he was eating his meals.

49. Defendants failed to pay Henriquez the overtime premium of one and one-half his regular hourly rate for hours worked over forty in a workweek.

50. Defendants failed to furnish Henriquez with a wage notice each time his pay rate changed.

51. Defendants failed to furnish Henriquez each time he was or is paid with an accurate wage statement including, *inter alia*, the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.

## FIRST CLAIM
### (Fair Labor Standards Act – Unpaid Overtime)

52. Plaintiff repeats and realleges all foregoing paragraphs as if set forth herein.

53. Defendants were required to pay Plaintiff one and one-half (1½) times his regular rate of pay for all hours worked in excess of forty hours in a workweek pursuant to the overtime wage provisions of 29 U.S.C. § 207, *et seq.*

54. Defendants failed to pay Plaintiff the overtime wages to which Plaintiff was entitled under the FLSA.

55. Defendants willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiff overtime wages.

56. Due to Defendants' violations of the FLSA, Plaintiff is entitled to recover his unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre- and post-judgment interest.

## SECOND CLAIM
### (New York Labor Law – Unpaid Overtime)

57. Plaintiff repeats and realleges all foregoing paragraphs as if set forth herein.

58. Under the NYLL and supporting New York State Department of Labor ("NYDOL") Regulations, Defendants were required to pay Plaintiff one and one half (1½) times the regular rate of pay for all hours Plaintiff worked in excess of forty.

59. Defendants failed to pay Plaintiff the overtime wages to which Plaintiff was entitled under the NYLL.

60. Defendants willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiff overtime wages.

61. Due to Defendants' willful violations of the NYLL, Plaintiff is entitled to recover his unpaid overtime wages, reasonable attorneys' fees and costs of the action, liquidated damages, and pre- and post-judgment interest.

**THIRD CLAIM**
**(NYLL Wage Theft Prevention Act – Failure to Provide Wage Notices)**

62. Plaintiff repeats and realleges all foregoing paragraphs as if set forth herein.

63. The NYLL and Wage Theft Prevention Act ("WTPA"), as well as the NYDOL regulations, such as but not limited to 12 N.Y.C.R.R. Part 146, require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

64. In violation of NYLL § 191, Defendants failed to furnish Plaintiff, whenever there was a change to his rate of pay, with wage notices containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law; in violation of the NYLL § 195(1).

65. Due to Defendants' willful violations of NYLL, Article 6, § 195(1), Plaintiff is entitled to liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action, as provided for by NYLL, Article 6, § 198(1-b).

9

## FOURTH CLAIM
### (NYLL Wage Theft Prevention Act – Failure to Provide Wage Statements)

66. Plaintiff repeats and realleges all foregoing paragraphs as if set forth herein.

67. The NYLL and WTPA require employers to provide employees with an accurate wage statement each time they are paid.

68. Throughout Plaintiff's employment with Defendants, Defendants paid Plaintiff without providing a wage statement at the end of every pay period accurately listing, *inter alia*: the overtime rate or rates of pay; the number of regular and overtime hours worked per pay period; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

69. Defendants failed to furnish Plaintiff with each payment of wages an accurate statement listing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages, in violation of the NYLL § 195(3).

70. Due to defendants' willful violations of NYLL, Article 6, § 195(3), Plaintiff is entitled to liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action, as provided for by NYLL, Article 6, § 198(1-d).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment:

    a. declaring that Defendants have violated the overtime wage provisions of the FLSA, the NYLL, and the NYDOL Regulations;

b. enjoining these violations of the FLSA, the NYLL, and the NYDOL Regulations;

c. declaring that Defendants violated the notice- and record-keeping provisions of the NYLL and WTPA;

d. declaring that Defendants' violations of the FLSA and NYLL were willful;

e. awarding Plaintiff unpaid overtime wages;

f. awarding Plaintiff liquidated damages in an amount equal to twice the total amount of the wages found to be due, pursuant to the FLSA and to the NYLL;

g. awarding Plaintiff liquidated damages as a result of defendants' failure to furnish accurate wage statements and annual notices pursuant to the NYLL;

h. awarding Plaintiff pre- and post-judgment interest under the NYLL;

i. awarding Plaintiff's reasonable attorneys' fees and costs pursuant to the FLSA and the NYLL; and

j. awarding such other and further relief as the Court deems just and proper.

Dated: New York, New York
July 30, 2018

PECHMAN LAW GROUP PLLC

By:
Louis Pechman
Lillian M. Marquez
488 Madison Avenue, 17th Floor
New York, New York 10022
(212) 583-9500
pechman@pechmanlaw.com
marquez@pechmanlaw.com
*Attorneys for Plaintiff*